| | |
|---|---|
| VRC CONSULTING, INC. d/b/a VRC MEDICAL SERVICES, INC., <br><br> Plaintiff, <br><br> v. <br><br><br> MANFRED STERNBERG, ESQUIRE, and MANFRED STERNBERG & ASSOCIATES, PC, and CHARLTON HOLDINGS GROUP, LLC, and SAMUEL GROSS, <br><br> Defendants. | UNITED STATES DISTRICT COURT DISTRICT OF NEW JERSEY CASE No.  24-cv-00710-MEF-JSA |

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

JARDIM, MEISNER, SALMON, SPRAGUE & SUSSER, P.C.
Bennet Susser, Esq., N.J. ID. No. 040081987
Michael V. Gilberti, Esq., N.J. ID. No. 02301981
30B Vreeland Road, Suite 100
Florham Park, NJ 07932
(973) 845-7648
bennet@jmslawyers.com
mgilberti@jmslawyers.com
Attorneys for Plaintiff VRC Consulting, Inc.
d/b/a VRC Medical Services, Inc.

On the Brief:

Bennet Susser
Michael V. Gilberti

## **Table of Contents**

TABLE OF CONTENTS ................................................................................................. i

PRELIMINARY STATEMENT ....................................................................................1

FACTUAL BACKGROUND .........................................................................................1

    A.  The Well-Pled Facts .........................................................................................2

        1.  The Sale Purchase Agreement .................................................................2

        2.  The Complaint's Additional Factual Allegations...................................4

    B.  Procedural Background ....................................................................................5

        1.  Plaintiff's Complaint: Causes of Action .................................................5

        2.  Jurisdictional Discovery: Sternberg, the Escrow Agent .........................6

        3.  Defendants' Motion to Dismiss ...............................................................7

        4.  Defendants' Other Fraud: The Eastern District of Pennsylvania Case ...................9

DISCUSSION ..............................................................................................................10

    I.  THE WELL-PLED ALLEGATIONS IN THE COMPLAINT SHOW THAT: (A) THE STERNBERG DEFENDANTS WERE AN INTEGRAL PART OF THE FRAUD; (B) THEY RELEASED VRC'S MONEY WITHOUT PROPER VERIFICATION; (C) THERE IS *IN PERSONAM* JURISDICTION; AND (D) VENUE IN NEW JERSEY IS PROPER.......................10

    A.  The Applicable Legal Standards ...................................................................10

        1.  The Legal Standard for Pleading ..........................................................10

        2.  The Legal Standard for a Motion to Dismiss under *Fed. R. Civ. P.* 12(b)(6)........11

        3.  The Legal Duty of an Escrow Agent......................................................12

    B.  VRC's Complaint States Facts to Support Its Claims of Fraud in the Inducement, Common Law Fraud and Civil Conspiracy ...............................13

        1.  The Applicable Legal Standards for Fraud in the Inducement, Civil Fraud and Conspiracy ..........................................................................13

        2.  VRC's Complaint Contains Sufficient Factual Allegations...................16

C. Because Defendants Never Signed the Agreement, the Allegations in the Complaint Amplify, Not Undermine, the Agreement ............................19

D. The Economic Loss Doctrine Does Not Bar the Common Law Fraud Claim............20

E. The Attorney Immunity Doctrine Does Not Bar These Claims..................................21

F. VRC's Participation Theory Has Sufficient Factual Basis ...........................................22

G. The Complaint Alternately and Properly Alleges Breach of Contract and Unjust Enrichment ...........................................................................................................23

H. The Sternberg Defendants Are Subject to Personal Jurisdiction in New Jersey..........24

    1. The Legal Standard for "Specific Jurisdiction" ........................................................25

    2. The Facts Here Provide an Adequate Basis for "Specific Jurisdiction" ................27

I. The Forum Selection Clause Is Not Valid and Does Not Apply ...................................27

    1. The Legal Standard Applicable to Forum Selection Clauses................................28

    2. The Forum Selection Clause Does Not Apply to Sternberg ..................................29

CONCLUSION.................................................................................................................................31

## Cases

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970)..................................................... 15

*Alloway v. Gen. Marine Indus., L.P.*, 149 N.J. 620 (1997)........................................... 20

*Alpert v. Crain, Caton & James, P.C.*, 178 S.W.2d 398 (Tex. App. 2005).................. 22

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................................................................... 12

*Avdel Corp. v. Mecure*, 58 N.J. 264 (1971) ................................................................. 25

*Banc Auto, Inc. v. Dealer Servs. Corp.*, 2008 U.S. Dist. LEXIS 67514 (E.D. Pa. 2008) ........... 29

*Banco Popular N. Am. v. Gandi*, 184 N.J. 161 (2005)............................................. 14,15

*Bayway Refining Co. v. State Utilities, Inc.*, 333 N.J. Super. 420 (App. Div. 2000)............. 25-26

*Bell Atl. v. Twombly*, 550 U.S. 544 (2007) .................................................................. 10

*Bd. of Educ. v. Hoek*, 38 N.J. 213, 238-39 (1962)...................................................... 14

*Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co.*, 226 F. Supp. 2d
      557 (D.N.J. 2002)................................................................................................ 20,21

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)................................................ 27

*Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477 (Tex. 2015) ...................................... 21-22

*Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141 (3d Cir. 1992) ............................... 25

*Charles Gendler Co., Inc. v. Telecom Equipment Corp.*, 102 N.J. 460 (1986)............. 25

*Colvin v. Van Wormer Resorts, Inc.*, 2008 U.S. Dist. LEXIS 102147 (D.N.J. 2008) ............... 25

*Cooper v. Bergton*, 18 N.J. Super. 272 (App. Div. 1952) ............................................ 12

*Cottman Transmission Sys. Inc. v. Martino*, 36 F.3d 291 (3d Cir. 1994) ................. 29,30

*Dent v. Cunningham*, 786 F.2d 173 (3d Cir. 1986)...................................................... 25

*Evancho v. Fisher*, 423 F.3d 347  (3d Cir. 2005) ........................................................ 11

*FerraTex, Inc. v. U.S. Sewer & Drain, Inc.*, 121 F. Supp. 3d 432 (D.N.J. 2015) ..................... 30

*Frederico v. Home Depot*, 507 F.3d 188 (3d Cir. 2007)............................................... 14

*G&F Graphic Servs. v. Graphic Innovators, Inc.*, 18 F. Supp. 3d 583 (D.N.J. 2014) .............. 22

*Gennari v. Wichert Co. Realtors*, 148 N.J. 582 (1997) ................................................... 21

*Gleason v. Norwest Mortg., Inc.*, 243 F. 3d 130 (3d Cir. 2001) ....................................... 20

*Goldfarb v. Solimine*, 245 N.J. 326 (2021) ................................................................. 29

*Hammersmith v. TIG Ins. Co.*. 480 F.3d 220 (3d Cir. 2007) .......................................... 29

*Hoffman-LaRoche, Inc. v. Greenberg*, 447 F.2d 872 (7th Cir.1971). ........................... 15,16

*In re Aquino*, 2008 U.S. Dist. LEXIS 101470 (D.N.J. 2008) ....................................... 25

*In re Hollendonner*, 102 N.J. 21 (1985). ................................................................ 12-13

*JD James Constr. v. BDP Landscaping*, 2020 N.J. Super. Unpub. LEXIS 1739
  (App. Div. 2020) ................................................................................................... 20

*Jewish Center of Sussex County v. Whale*, 86 N.J. 619 (1981) ...................................... 14

*Jones v. City of Chicago*, 856 F.2d 985 (7th Cir.1988) ................................................ 15

*Jumara v. State Farm Ins. Co.*, 55 F.3d 873 (3d Cir. 1995) ......................................... 29

*Kiah v. Singh*, 2009 U.S. Dist. LEXIS 321 (D.N.J. 2009) ............................................. 25

*Kamm's Estate v. C.I.R.*, 349 F.2d 953 (3d Cir.1965) ................................................... 12

*Kanter v. Barella*, 489 F.3d 170 (3d Cir. 2007) ......................................................... 11

*LoBosco v. Kure Eng'g Ltd.*, 891 F. Supp. 1020 (D.N.J. 1995) ...................................... 21

*Mantel v. Landau*, 134 N.J. Eq. 194 (Ch. Div. 1943) ................................................. 12

*Mathis v. Yarak*, 71 N.J. Super. 234 (App. Div. 1961) ................................................ 12

*Matsumoto v. Matsumoto*, 335 N.J. Super. 174 (App. Div.), *aff'd and modified on
  other grounds*, 171 N.J. 110 (2000) ...................................................................... 26

*Matter of Eisenberg*, 75 N.J. 454 (1978) ................................................................... 13

*Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93 (3d Cir. 2004) .................................... 25,27

*Moneygram Payment Sys. v. Consorcio Oriental, SA*, 65 F. App'x 844 (3d Cir. 2003) ............ 29

*Moon Carrier v. Reliance Ins. Co.*, 153 N.J. Super. 312 (L. Div. 1977) ..................................... 25

*Morgan v. Union County Bd. of Chosen Freeholders*, 268 N.J. Super. 337 (App. Div. 1993), *certif. denied*,135 N.J. 468 (1994) .................................................................. 14-15

*Morganroth & Morganroth v. Norris, McLauchlin & Marcus, P.C.*, 331 F.3d 406 (3d Cir. 2003)........................................................................................................... 14

. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972) ............................................... 29

*O'Connor v. Sandy Lane Hotel Co, Ltd.*, 496 F.3d 312 (3d Cir. 2007) ............................ 26

*Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358 (3d Cir. 1996)................................... 29

*Papasan* v. *Allain*, 478 U.S. 265 (1986) ......................................................................... 11

*Park Inn Int'l, L.L.C. v. Mody Enters.*, 105 F. Supp. 2d 37 (D.N.J. 2000) ..................... 30

*Pathfinder Mgmt. v. Mayne Pharma PTY*, 2008 U.S. Dist. LEXIS 61081 (D.N.J. 2008) ......... 25

*Polytek Development Corp. v. 'Doc' Johnson Enterprises*, 32 F. Supp. 3d 243 (E.D. Pa. 2001)...................................................................................................................... 28

*Rodin Properties-Shore Mall, N.V. v. Cushman & Wakefield, Inc.*, 49 F. Supp. 2d 709 (D.N.J. 1999).............................................................................................................. 26

*Rotermund v. U.S. Steel Corp.*, 474 F.2d 1139 (8th Cir.1973)......................................... 14

*Rush v. Savchuk*, 444 U.S. 320 (1980) ............................................................................. 26

*Saltiel v. GSI Consultants, Inc.*, 170 N.J. 297 (2002) ................................................. 20,23

*Santiago v. Warminster Twp.*, 629 F.3d 121 (3d Cir. 2010) ........................................... 11

*Scheuer* v. *Rhodes*, 416 U.S. 232 (1974) ......................................................................... 11

*Shelton v. Restaurant.com, Inc.*, 214 N.J. 419 (2013) ................................................... 29

*Spring Motors Distribs., Inc. v. Ford Motor Co.*, 98 N.J. 555 (1985) ............................ 20

*State v. Murphy*, 168 N.J. Super. 214 (App. Div.), *certif. denied*, 82 N.J. 264 (1979)............... 15

*State v. Porro*, 152 N.J. Super. 179 (App. Div. 1977), *appeal dismissed*, 77 N.J. 504 (1978) ...................................................................................................... 15

*State, Dep't of Envtl. Prot. v. Ventron Corp.*, 94 N.J. 473 (1983) ............................... 23

*State, Dep't of Treasury, Div. of Inv. ex rel. McCormac v. Qwest Communic'ns*
*Int'l., Inc.*, 387 N.J. Super. 487 (App. Div. 2006), *cert. denied sub nom. Szeliga*
*v. N.J. Dep't of Treasury*, 550 U.S. 935 (2007) ...................................................... 26

*Superior Precast, Inc. v. Safeco Ins. Co. of Am.*, 71 F. Supp. 2d 438 (E.D. Pa. 1999)......... 29-30

*Thieme v. Aucoin-Thieme*, 227 N.J. 269, 288 (2016) ...................................................... 24

*Trevino v. Brookhill Capital Res., Inc.*, 782 S.W.2d 279 (Tex. App. 1989).............................. 12

*United States v. Benedetto*, 558 F.2d 171 (3d Cir. 1977) .............................................. 16

*United States v. Carter*, 576 F.2d 1061 (3d Cir. 1978) .................................................. 15

*United States v. Gonzales*, 729 F. Supp. 1057 (D.N.J. 1990) ......................................... 15

*VIST Fin. Corp. v. Tartaglia*, 2010 U.S. Dist. LEXIS 70503 (D.N.J. 2010) ........................ 26

*Weichert Co. Realtors v. Ryan*, 128 N.J. 427 (1992) .................................................... 29

*Wortham v. KarstadtQuelle AG*, 320 F. Supp. 2d 204 (D.N.J. 2004) ................................ 26


## Rules

*Fed. R. Civ. P.* 4(e) .................................................................................................... 25

*Fed. R. Civ. P.* 8 ........................................................................................................ 10

*Fed. R. Civ. P.* 9(b) .................................................................................................... 14

*Fed. R. Civ. P.* 12(b)(6) ......................................................................................... 11,16

*N.J. Rule* 4:4-4 ......................................................................................................... 25

*N.J. Rule* 4:4-4(b)(1) .............................................................................................. 25-26


## Statues and Other Authorities

5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216 (3d ed. 2004). ...................... 11

## PRELIMINARY STATEMENT

Employing the ruse of supplying plaintiff VRC Consulting Services, Inc. d/b/a VRC Medical Services ("VRC") with Covid test kits and delivering them to New Jersey, defendants made $2.5 million of VRC's money disappear. VRC is and was a medical equipment provider and a New Jersey corporation. Defendants, all non-New Jersey "citizens," solicited VRC's business, sent them a proposed contract, directed them to wire money from and were supposed to deliver the test kits to, New Jersey. Defendants Manfred Sternberg and Manfred Sternberg & Associates, P.C. (collectively "Sternberg" or "the Sternberg defendants"), an attorney and his law firm, were the escrow agents for the sale. Sternberg wrote the Sale and Purchase Agreement ("SPA") structuring the sale. Sternberg represented that he would hold VRC's money in escrow until he confirmed the delivery of the test kits to a common carrier. Relying on the SPA and other false representations, VRC wired $2,449,440 to Sternberg's trust account. Without confirming that the other defendants had delivered the test kits to a common carrier, Sternberg simply released the money, and VRC received nothing.

Nonetheless, Sternberg moves to dismiss VRC's complaint, arguing: (1) it does not allege sufficient facts to state a cause of action; and (2) defendants do not have sufficient contacts with New Jersey to permit personal jurisdiction and venue here.

The Court should deny their motion.

## FACTUAL BACKGROUND

The facts stated here come from plaintiffs' complaint and jurisdictional discovery that the Court permitted. [Declaration of Michael V. Gilberti ("Gilberti Dcl.") Exhibit 1 ¶¶ 1-152 (pp. 1-22)] The parties exchanged and answered interrogatories and document requests, and VRC's

principal, Stephen Corba, and Manfred Sternberg, the "escrow agent," appeared for depositions. [Gilberti Dcl. Ex. 2, 3]

### A. The Well-Pled Facts.

On January 20, 2022, VRC sent a purchase order for "204,120 iHealth Covid-19 Antigen Rapid two-pack test kits to defendant Charlton Holdings Group, LLC" ("CHG") and its managing member, defendant Samuel Gross for $2,449,440. [Gilberti Dcl. Exs. 1 and 4 ¶ 3]

### 1. The Sale and Purchase Agreement.

After CHG and VRC verbally agreed to the sale, Sternberg, CHG's lawyer, drafted the January 18, 2022 SPA and sent it to VRC in New Jersey. [Gilbert Dcl. Ex. 3 (p. 36:8-17)] The SPA represented that CHG would sell "498,960 boxes of 2 count iHealth COVID 19 home test kits" to VRC for a "total cost $5,987,520.00." [Ex. 4 ¶¶ 1, 2, 3, 5] It purported to create the framework for the sale, provided defendants' fraud a façade of legitimacy and gave VRC a false sense of comfort in proceeding. The SPA broke down the intended sale into "product lots" [Ex. 4 ¶ 3] and represented that the sale would proceed in five steps:

(1) VRC was to send CHG a "Purchase Order" for each "lot" of goods [Ex. 4 ¶ 4];

(2) CHG would send VRC an "invoice as the product lots were **ready for delivery**" [Ex. 4 ¶¶ 3, 4];

(3) "Immediately after delivering" the Purchase Order to CHG, VRC would wire transfer payment for "the actual number of boxes of product contained in the Purchase Order" to Sternberg's escrow account [Ex. 4 ¶¶ 4, 5];[1]

---

[1] In his deposition, when asked "what was your understanding of why money was being sent to your escrow account," Sternberg answered: "Well, under the purchase and – sale and purchase agreement, I felt like that outlined why the funds were being sent to my trust account for the benefit of Charlton Holding. That's – because that's what it says." [Ex. 3 (p. 35:19-25)] He drafted the SPA "at Charlton's request to make sure that everybody understood what was going on with the money." [Ex. 3 (p. 36:1-13)] He added that, under the SPA, "after [VRC] wires it, then the purchase price funds are released to the seller . . . ." [Ex. 3 (p. 37:4-6)]

(4) When VRC's transferred funds cleared in Sternberg's escrow account, **CHG was required to provide a "Bill of Sale" and "deliver the Goods to a common carrier** with instructions **to deliver the Goods** to the location(s)" that VRC designated [Ex. 4 ¶ 6] "The transfer shall happen contemporaneously with funds being released [from Sternberg's escrow account] to the Seller" [Ex. 4 ¶ 6]; and

(5) At the same time, Sternberg would release the money to CHG. [Ex. 4 ¶ 6]

Sternberg was the "escrow agent" for the transaction. [Ex. 3 (p. 36:8-17)][2] The Sternberg defendants were pivotal to this scheme: he wrote the SPA and controlled VRC's money.

Under the pressure of the COVID pandemic, VRC signed and returned the SPA. VRC did not learn until much later that Sternberg and CHG never signed it. But they let VRC believe they had signed. And whether or not it is a binding contract, it was part of the fraud. It contained defendants' false promise to deliver the test kits and that Sternberg would not release VRC's money until CHG provided a Bill of Sale and delivered the test kits to a common carrier.

Trading on VRC's belief that there was a binding contract, defendants executed their scheme. They told VRC that they were ready to go and instructed VRC to wire $2,449,440 into Sternberg's escrow account "to hold its place in the delivery queue." Relying on defendants' representations, on January 20, 2022, VRC wired the money. [Gilberti Dcl. Exs. 1 and 2] And Sternberg released it.

In his deposition, Sternberg admitted that, when he released VRC's money to CHG, he did not know whether CHG had provided a Bill of Sale or delivered the test kits to a common carrier. [Exs. 3 (p. 35:1-17) and 4 ¶ 6]

---

[2] Sternberg testified that he "drafted [the SPA] at Charlton's request to make sure that everybody understood what was going on with the money." [Ex. 3 (p. 36:10-12)]

3

Despite repeated demands, defendants never delivered any test kits or returned VRC's money.

### 2. The Complaint's Additional Factual Allegations.

Defendants' conduct after taking VRC's money and not delivering the test kits is more evidence of their intent to defraud. With more lies, they lulled VRC into believing that the goods were *in transit*. Several times during 2022, defendants, Sternberg included, misrepresented that the test kits were *en route* for delivery no later than February 17, 2022. [Gilberti Dcl. Ex. 1 ¶ 33 (p. 7)] On February 16, 2022, a man named "Shraga" called VRC and said that the text kits were on a truck and would be delivered by 4:00 p.m. that day. [Gilberti Dcl. Ex. 1 ¶ 36 (p. 7)] The truck did not arrive. On February 17, 2022, VRC called Shraga. He said that the truck had "broken down," and the test kits would be there that day. [Gilberti Dcl. Ex. 1 ¶ 36 (p. 7)] They never arrived. And defendants never returned VRC's money.

Significantly, defendants have not produced one shred of evidence (no shipping manifest, no Bill of Lading) that the test kits ever existed, were shipped or were delivered to a common carrier. [Gilberti Dcl. Ex. 1 ¶¶ 34, 37-42 (pp. 7-8)] In his deposition, when asked if VRC had requested "assurance that the funds would not be released unless delivery was made," Sternberg cryptically answered: "I don't know how I could assure him that the money wouldn't be paid to the seller of the goods unless the – product was – was – was shipped. How would I know? How could I assure anybody anything? I'm in Texas, I wouldn't know. Plus it is not my job to give assurances." [Ex. 3 (p. 35:1-17)]

VRC had to locate and buy test kits from other sources to supply its customers. As a result, VRC has incurred and will incur substantial damages. [Gilberti Dcl. Ex. 1]

**B. Procedural Background.**

**1. Plaintiff's Complaint: Causes of Action.**

On February 2, 2024, VRC filed a seven-count diversity complaint[3] against CHG, Gross and the Sternberg defendants for:

(1) **Fraud in the Inducement**: defendants formed CHG and, using false promises and lies, induced VRC to: (a) buy test kits that they did not have; and (b) wire $2,449,440 to Sternberg's escrow account for test kits that they did not deliver, damaging VRC [Gilberti Dcl. Ex. 1 ¶¶ 43-54 (pp. 8-9)];

(2) **Fraud**: based on the same allegations as Count 1 [Ex. 1 ¶¶ 55-66 (pp. 9-11)];

(3) **Civil Conspiracy**: defendants agreed and conspired to defraud VRC [Ex. 1 ¶¶ 67-75 (pp. 11-12)];

(4) **Piercing the Corporate Veil of CHG**: Gross, Sternberg and his law firm created and used CHG as their *alter ego* to defraud VRC [Ex. 1 ¶¶ 76-79 (pp. 12-13)];

(5) **Participation Theory**: Gross and Sternberg, personally and falsely, represented that they possessed, would sell and would quickly deliver test kits and would not release VRC's money until the test kits were delivered to a common carrier [Ex 1 ¶¶ 80-98 (pp. 13-15)];

(6) **Breach of Contract**: if, in fact, a contract to sell the test kits existed, defendants breached it by taking VRC's money and not delivering them [Ex. 1 ¶¶ 99-108 (pp. 15-16)]; and

---

[3] VRC's complaint states that: VRC is a citizen of New Jersey; the Sternberg defendants are citizens of Texas; and CHG and Gross are citizens of New York. The amount in controversy exceeds $75,000. As a result, federal jurisdiction is proper under 28 U.S.C. § 1332(a)(1). Venue in New Jersey is proper under 28 U.S.C. § 1391. [Gilberti Dcl. Ex. 1 ¶¶ 7-13 (pp. 3-4)]

(7) **Unjust Enrichment/Quantum Meruit**: by taking VRC's money and not delivering the test kits, defendants have been unjustly enriched by keeping VRC's money [Ex. 1 ¶¶ 109-119 (pp. 17-18)]

Accordingly, VRC seeks compensatory, consequential and punitive damages, reasonable attorneys' fees, costs, interest and any other necessary and appropriate relief.

## 2. Jurisdictional Discovery: Sternberg, the Escrow Agent.

The Court permitted jurisdictional discovery. Sternberg testified in deposition that:

(1) He "might have seen" the contract.[4] But even though he had produced his "whole file," there was no copy there [Gilberti Dcl. Ex. 3 (p. 34:10-25)];

(2) On January 20, 2022, he received VRC's first payment, $2,499,440 [Ex. 3 (pp. 57:16-58:7)];

(3) When he "wired the money [VRC's funds] out" of his escrow account to CHG, he did not "know if the goods were on the truck or not" [Ex. 3 (p. 45:2-5)];

(4) He learned from CHG that the test kits had not been delivered to VRC [Ex. 3 (p. 43:2-5)]; and

(5) His client directed him to wire the money to a third-party, even though he knew that the test kits had not been delivered to either a common carrier or VRC. [Ex. 3 (pp. 43:6-45:25, 57:16-58:7)]

Sternberg also downplayed, if not ignored, his fiduciary duty to VRC. Even though he was a practicing attorney and he wrote the SPA requiring him to confirm delivery of the test kits before releasing VRC's money, he testified that:

---

[4] Elsewhere in his deposition, he admitted he wrote the SPA. [Ex. 3 (p. 36:10-12)]

6

(1) When the money reached his account, it was defendants' property, and he could do whatever they instructed [Ex. 3 (pp. 35:19-25)];

(2) He had "no idea who VRC is or was" and "did no due diligence on VRC" [Ex. 3 (pp. 32:21-25, 33:5-8, 29:21-25)];

(3) He did not know how he could assure VRC that "the money wouldn't be paid to the seller of goods unless the – the product was – was – shipped." [Ex. 3 (p. 35:1-15)] He apparently did not believe that, as the escrow agent, he owed any duty VRC.

As a result, he ignored any duty, fiduciary or other, to enforce the SPA. And to date, no one, including Sternberg, has ever produced any evidence that the test kits existed or were shipped.

### 3. Defendants' Motion to Dismiss.

In their motion to dismiss, the Sternberg defendants argue that:

(1) "The Complaint Fails to State a Claim Against Sternberg": Counts I, II and III should be dismissed because "the Complaint fails to identify with specificity the pre-contractual or pre-wire representations attributable to Sternberg, including when such representation was made, how it was made or to whom" [Deft. Br. (pp. 15-16)];

(2) "The Allegations in the Complaint are Undermined by the Agreement" because "the contention that Sternberg prematurely released the purchase funds is flatly negated by plain terms of the Agreement" [Deft. Br. (pp. 17-18)];

(3) "The Sternberg Defendants Had No Obligation to Perform the Seller's Duties Under the Agreement" because the SPA placed those obligations on CHG. "The Sternberg defendants had no obligation to perform the Seller's duties to provide the Goods," and even if they did, they did not make any "pre-contractual misrepresentations" [Deft. Br. (p. 18)];

(4) "The Common Law Fraud Claim is Barred by the Economic Loss Doctrine" because "a tort remedy does not arise from a contractual relationship unless the breaching party owes an independent duty imposed by law" [Deft. Br. (pp. 18-19)];

(5) "The Claims are Barred by [Texas'] Attorney-Immunity Doctrine" because Sternberg is a Texas attorney, his principal place of business in Texas and all of his conduct occurred in Texas. As a result, Texas' "attorney immunity doctrine" shields him from any liability [Deft. Br. (pp. 19-22)];

(6) "Plaintiff's Participation Theory Claim Should Be Dismissed" because "Plaintiff does not, and cannot, specifically allege that Sternberg intentionally participated in this misconduct to mislead Plaintiff despite the entity's review, approval and acceptance of the Agreement, Count V must be dismissed as a matter of law" [Deft. Br. (pp. 22-23)];

(7) "Plaintiff's Breach of Contract and Unjust Enrichment Claims Should Be Dismissed" because: (a) "The Sternberg Defendants are Neither Parties Nor Signatories to the Agreement Between Plaintiff and CHG"; and (b) "The Complaint Does Not Properly Plead a Claim for Unjust Enrichment" [Deft. Br. (pp. 24-25)];

(8) "The Sternberg Defendants Are Not Subject to Personal Jurisdiction in this Forum" because: (a) "There is No Basis for Exercising Specific Jurisdiction Over Sternberg Because Plaintiff Cannot Establish that Its Claims Arose Directly Out of Contacts Formed by Sternberg with New Jersey"; and (b) "Plaintiff Cannot Point to Evidence of Specific Facts in the Record In Support of its Contention that Personal Jurisdiction Exists" because: (i) "Sternberg is Not a Principal of CHG"; and (ii) "There is No Evidence that the Sternberg Defendants Solicited Business on Behalf of CHG or Made Any Business Decisions on its Behalf" [Deft. Br. (pp. 25-38)]; and

8

(9) "Alternatively, the Action Should Be Transferred to the United States District Court for the Southern District of Texas" because, under 28 U.S.C. § 1404(b), the Court should send the case to Texas in the interest of justice, for the convenience of the parties and witnesses. [Deft. Br. (pp. 38-39)]

### 4. Defendants' Other Fraud: The Eastern District of Pennsylvania Case.

This is not the only fraud that these defendants have committed.[5]  Other customers have charged them with near-identical frauds.  For example, in ***American Environmental Enterprises Inc. d/b/a TheSafetyHouse.com v. Manfred Steinberg et al.***, Case No. 22-cv-00688-JMY (E.D. Pa., August 2, 2022) ("***American Environmental***"), plaintiff, another customer, made similar claims against these same defendants.  [Gilberti Dcl. Ex. 5]  Using a similar SPA, defendants promised to deliver Covid test kits to that company; they induced it to wire $1,965,000 to Sternberg's escrow accounts; Sternberg released the money; and plaintiff never got the test kits or its money back.

In responding to the complaint, the Sternberg defendants filed a similar "Motion to Dismiss for Improper Venue pursuant to Federal Rule of Civil Procedure 12(b)(3) and/or Forum Non Conveniens," invoking the SPA's forum selection clause and making the same arguments they have made here.  The District Court rejected all of them.

This Court should do the same.

---

[5] According to a Law 360 article, titled "Ex-NY Attorney Pleads Guilty To Stealing $4.7M From Clients," and information in other litigation involving VRC and these defendants, these defendants have perpetrated other frauds like this one. [Gilberti Dcl. Ex. 6]

## DISCUSSION

### I. THE WELL-PLED ALLEGATIONS IN THE COMPLAINT SHOW THAT: (A) THE STERNBERG DEFENDANTS WERE AN INTEGRAL PART OF THE FRAUD; (B) THEY RELEASED VRC'S MONEY WITHOUT PROPER VERIFICATION; (C) THERE IS *IN PERSONAM* JURISDICTON; AND (D) VENUE IN NEW JERSEY IS PROPER.

The Sternberg defendants argue that VRC's complaint does not allege sufficient facts to establish fraud in the inducement, common law fraud or conspiracy. [Deft. Br. Pt. I, A, C (pp. 13-16, 18)]  They also argue that the forum selection clause in the SPA deprives this Court of jurisdiction and venue over VRC's claims and the case should proceed in Texas.

However, VRC's allegations satisfy the applicable pleading standard, and all of defendants' claims are without merit.

### A. The Applicable Legal Standards.

### 1. The Legal Standard for Pleading.

*Fed. R. Civ. P.* 8(a), titled "Claim for Relief," requires that:

A pleading that states a claim for relief must contain:

(1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;

(2) a short and plain statement of the claim showing that the pleader is entitled to relief; and

(3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Ordinarily, it is sufficient to plead facts that do no more than raise an allegation to the level of plausibly warranting relief.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (to survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face").

10

**2. The Legal Standard for a Motion to Dismiss under *Rule* 12(b)(6).**

Defendants have moved to dismiss under *Fed. R. Civ. P.* 12(b). It provides:

Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:

\*       \*       \*

(6) failure to state a claim upon which relief can be granted; and

\*       \*       \*

A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed. If a pleading sets out a claim for relief that does not require a responsive pleading, an opposing party may assert at trial any defense to that claim.

In deciding defendants' motion, the Court must "accept as true all [factual] allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." *Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007), *quoting Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005).

To defeat a motion to dismiss under *Fed. R. Civ. P.* 12(b)(6), plaintiff must state the "grounds" of its "entitle[ment] to relief": the complaint must provide more than labels and conclusions or a formulaic recitation of the elements of a cause of action. *Papasan* v. *Allain*, 478 U.S. 265, 286 (1986). Factual allegations must raise a right to relief above speculation level. *See* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp 235-36 (3d ed. 2004). A well-pled complaint may proceed even if it appears "that a recovery is very remote and unlikely." *Scheuer* v. *Rhodes*, 416 U.S. 232, 236 (1974).

To decide the motion, the Court must conduct a three-part analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). The Court must:

11

(1) "tak[e] note of the elements a plaintiff must plead to state a claim." *Id.,* *quoting Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009);

(2) identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id., quoting Iqbal*, 556 U.S. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice. *Id.* at 131, *quoting Iqbal*, 556 U.S. at 678; and

( 3 ) "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* at 130, *quoting Iqbal*, 556 U.S. at 679.

### 3. The Legal Duty of an Escrow Agent.

As escrow agent, Sternberg owed a fiduciary duty not just to his client, CHG, but also to VRC. "It is well settled that an escrow holder acts as an agent for both parties." *In re Hollendonner*, 102 N.J. 21, 26 (1985), *citing Mathis v. Yarak*, 71 N.J. Super. 234, 238 (App. Div. 1961); *Cooper v. Bergton*, 18 N.J. Super. 272 (App. Div. 1952); *Mantel v. Landau*, 134 N.J. Eq. 194 (Ch. Div. 1943). An escrow agent's relationship with the parties is distinct from that of an agent, who acts exclusively for one party's interest. *Hollendonner* 102 N.J. at 26-27, *citing Kamm's Estate v. C.I.R.*, 349 F.2d 953, 956 (3d Cir.1965).[6]

In *Hollendonner*, the New Jersey Supreme Court reviewed the Ethics Committee's

---

[6] Even though Texas law does not apply, it is worth noting that it is consistent with New Jersey law. Under either law, Sternberg is charged with knowledge of an "escrowee's duties and responsibilities." *Trevino v. Brookhill Capital Res., Inc.*, 782 S.W.2d 279, 281 (Tex. App. 1989) ("An escrow agent owes a fiduciary duty to both parties to a contract. This fiduciary duty consists of: (1) the duty of loyalty; (2) the duty to make full disclosure; and (3) the duty to exercise a high degree of care to conserve the money and pay it only to those persons entitled to receive it") (Citations omitted). *Id.* As a result, there is no "conflict" to be analyzed.

suspension of a New Jersey attorney for improperly taking money from his escrow account. His client, who was selling a building, directed him to release the buyer's money, even though the buyer, who had deposited it, had not agreed. The Court held that:

> Because of his status as escrowee, Respondent [attorney] **owed a fiduciary duty <u>both</u> to his client, the seller, and to the buyer**. The $2,000 deposit was **not to change hands unless and until** the sale of the building took place. Until that time, this money remained the property of the buyer. . . . An escrowee cannot use those funds without permission of both parties. Although Respondent conceded that he knew his client could not give permission on behalf of the second party to an escrow agreement, he apparently did not fully comprehend the duties of an escrowee. Nevertheless, ignorance of the rules is no excuse. *Matter of Eisenberg*, 75 N.J. 454, 456-57 (1978). His misconduct here violated DR 9-102 in that he misused funds entrusted to him. (Emphasis added)

102 N.J. at 27. This holding applies here.

### B. VRC's Complaint States Facts to Support its Claims of Fraud in the Inducement, Common Law Fraud and Civil Conspiracy.

At the heart of Sternberg' arguments is the claim that VRC's complaint does not allege sufficient facts to establish fraud in the inducement, common law fraud or civil conspiracy. [Deft. Br. Pt. I, A, C (pp. 13-16, 18)]. Their arguments fail as a matter of law.

#### 1. The Applicable Standards for Fraud in the Inducement, Common-Law Fraud and Civil Conspiracy.

Initially, as the Sternberg defendants correctly note, the elements of fraud in the inducement and common-law fraud are similar, if not identical. [Deft. Br. (p. 13)] To state a claim for fraud in the inducement or common-law fraud, VRC must prove that:

(1) Defendants made a material representation of a presently existing or past fact;

(2) With knowledge of its falsity;

(3) With the intention that VRC would rely on it;

(4) Resulting in VRC's reliance; and

13

(5) To VRC's detriment.

***Jewish Center of Sussex County v. Whale***, 86 N.J. 619, 624 (1981) (fraud in the inducement);

***Gennari v. Wichert Co. Realtors***, 148 N.J. 582, 610 (1997) (common-law fraud).  [Deft. Br. p. 13]

To state a claim for civil conspiracy, VRC must prove:

(1) "a combination of two or more persons";

(2) "a real agreement or confederation with a common design";

(3) "the existence of an unlawful purpose" and

(4) "proof of special damages."

***Morganroth & Morganroth v. Norris, McLauchlin & Marcus, P.C.***, 331 F.3d 406 414 (3d Cir. 2003).

Under ***Fed. R. Civ. P.*** 9(b), VRC must "state with particularity the circumstances constituting fraud or mistake." ***Frederico v. Home Depot***, 507 F.3d 188, 200 (3d Cir. 2007).

"In New Jersey, a civil conspiracy is 'a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage.'" ***Banco Popular N. Am. v. Gandi***, 184 N.J. 161, 177 (2005), *citing* ***Morgan v. Union County Bd. of Chosen Freeholders***, 268 N.J. Super. 337, 364 (App. Div. 1993), *certif. denied*, 135 N.J. 468 (1994), *quoting* ***Rotermund v. U.S. Steel Corp.***, 474 F.2d 1139, 1145 (8th Cir.1973).

Proving a conspiracy does not require direct evidence of the agreement between the conspirators. ***Bd. of Educ. v. Hoek***, 38 N.J. 213, 238-39 (1962).  And the unlawful agreement need not be express.  A coconspirator need only "share the general conspiratorial objective, but . .

14

. need not know all the details of the plan designed to achieve the objective or possess the same motives for desiring the intended conspiratorial result." *Morgan*, 268 N.J. Super. at 365. To prove a conspiracy, "it simply must be shown that there was 'a single plan, the essential nature and general scope of which [was] known to each person who is to be held responsible for its consequences.'" *Id.*, *quoting Hoffman-LaRoche, Inc. v. Greenberg*, 447 F.2d 872, 875 (7th Cir.1971). *Id.* "It is enough [for liability] if you understand the general objectives of the scheme, accept them, and agree, either explicitly or implicitly, to do your part to further them." *Banco Popular*, 184 N.J. at 177, *citing Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir.1988).

It is "well known that the nature of a conspiracy is such that more often than not the only type of evidence available" is circumstantial in nature. *Morgan*, 268 N.J. Super. 337, 365, *quoting Hoek, 38 N.J.* at 239. "Thus, the question whether an agreement exists should not be taken from the jury in a civil conspiracy case so long as there is a possibility that the jury can 'infer from the circumstances [that the alleged conspirators] had a meeting of the minds and thus reached an understanding' to achieve the conspiracy's objectives." *Id.*, *quoting Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970).

The courts have derived the civil standard from the standard for criminal conspiracies. For a criminal violation, "[t]he acts and declarations of a conspirator in furtherance of the conspiracy are binding on all parties to the conspiracy." *State v. Porro*, 152 N.J. Super. 179, 188 (App. Div. 1977), *appeal dismissed,* 77 N.J. 504 (1978). "[O]nce a . . . conspiracy is formed, each conspirator while a member [of the unlawful combination] is liable for every act and declaration of each and all of the conspirators, done or made in the pursuance of . . . the conspiracy." *State v. Murphy*, 168 N.J. Super. 214, 217 (App. Div.), *certif. denied,* 82 N.J. 264 (1979); *see also United States v. Gonzales*, 729 F. Supp. 1057, 1062 (D.N.J. 1990); *United States v. Carter*, 576 F.2d 1061, 1064

15

(3d Cir. 1978); *United States v. Benedetto*, 558 F.2d 171, 175-76 (3d Cir. 1977). As a result, a plaintiff does not need to prove that each coconspirator knew the "exact limits of the illegal plan or the identity of all participants." *Morgan*, 268 N.J. Super. at 365, *quoting Hoffman-LaRoche*, 447 F.2d 872 at 875. These principles apply equally to a civil conspiracy. *Id*. at 366.

### 2. VRC's Complaint Contains Sufficient Factual Allegations.

Sternberg argues that the complaint "fails to identify with specificity any pre-contractual or pre-wire transfer representations attributable to Sternberg." [Deft. Br. Pt. I, A (p. 15)][7]

The short answer is: he wrote the SPA. It was an integral part of the fraud. VRC alleges that all defendants, including Sternberg, "fraudulently induced" it "to purchase 204,120 iHealth Covid-19 Antigen Rapid two-pack test kits . . . in exchange for payment of $2,449,440.00 (the 'Order')." [Gilberti Dcl. Ex. 1 ¶ 2 (p. 2)] In the SPA, **Sternberg** falsely represented how the sale would proceed, the framework of the fraud. And **he** sent it to VRC.

Defendants' argument fails for a second reason. VRC has charged that the Sternberg defendants were coconspirators with the other defendants. As a result, no matter when they joined the conspiracy, they are liable for all previous and subsequent acts of their coconspirators, whether or not they knew of them.

VRC's complaint sufficiently states these facts. [Gilberti Dcl. Ex. 1] The complaint lists the acts of the coconspirators. It states that on January 20, 2022, Gross, acting for CHG, agreed to sell, and VRC agreed to buy, 204,230 Covid test kits for $2,449.440. [Gilberti Dcl. Ex. 1 ¶ 14] It

---

[7] In *American Environmental*, while not specifically addressing a motion to dismiss under *Fed. R. Civ. P.* 12(b)(6), the Court held that plaintiff's allegations of fraud, like those in this case, were sufficient "to meet the heightened pleading requirement for allegations of fraud as set forth in Federal Rule of Civil Procedure 9(b) in order to set aside the forum selection clause." [Gilberti Dcl. Ex. 5 (p. 2/3)] The same standard applies here. This Court should reach the same result and deny Sternberg's motion under *Fed. R. Civ. P.* 12(b)(6).

also states that defendants "represented and promised to VRC that they could sell and quickly deliver" the test kits "because they had access to the Covid Test Kits on the ground, ready to sell, in the United States." [Ex. 1 ¶ 15 (p. 4)]

Sternberg actively participated in both the fraud and the conspiracy. He misrepresented that VRC had to wire $2,449,440 to his escrow account "to hold [VRC's] place in the queue, and [defendants] promised to sign and return the [SPA] to [VRC] as soon as the funds were transferred." [Ex. 1 ¶¶ 16-18 (pp. 4-5)] He gave VRC specific wiring instructions. And VRC relied on the SPA and his directions – including that defendants "had access to the Covid Test Kits on the ground, ready to sell in the United States" and the SPA was in place – in wiring its money to his escrow account. [Ex. 1 ¶ 19 (p. 5)]

The complaint alleges facts, showing defendants' intent to defraud VRC, and overt acts to advance the scheme, including that:

(1) "Defendants refused to sign and deliver the [SPA] to [VRC]" [Ex. 1 ¶ 20 (p. 5)];

(2) Despite defendants' representation, the test kits "were not currently available for purchase or shipment": in fact, defendants provided "no Bill of Lading, or other shipping information" as represented in the SPA and "*as a prerequisite* to release of the $2,449,440.00 Purchase Price from the attorney escrow account of the Sternberg Attorney Defendants" [Ex. 1 ¶¶ 25-28 (p. 6) (Emphasis added)];

(3) Even though VRC sent a purchase order and wired the money, defendants did not deliver the test kits or return VRC's money [Ex. 1 ¶¶ 21-26 (pp. 5-6)]; and

17

(4) Sternberg released the money without verifying that defendants had delivered the test kits to a common carrier.[8]

The complaint adds that the Sternberg defendants actively participated in the cover-up, another important facet of the conspiracy. "[O]n multiple occasions during 2022, the Sternberg Attorney Defendants misrepresented to [VRC] the Covid Test Kits were *en route* and would be delivered by no later than February 17, 2022, when in fact they were not with a common carrier or otherwise being shipped to Plaintiff; immediately (and as of the filing of this Complaint), no delivery had been made." [Gilberti Dcl. Ex. 1 ¶ 33 (p. 7)] Their cover-up made detection difficult, if not impossible. As a result, there is sufficient evidence to prove a civil conspiracy.

Sternberg's acts were critical to the conspiracy. His status as a lawyer, his law firm and their presence gave VRC a false sense of security and gave the transaction a veneer of legitimacy.[9] He assured VRC that the "Purchase Price would not be released from the attorney escrow account of the Sternberg Attorney Defendants unless and until the Covid Test Kits had been delivered to a common carrier for delivery to VRC." [Ex. 1 ¶ 28 (p. 6)] As a lawyer and the author of the SPA, he knew that, before releasing VRC's money, he had a fiduciary duty to verify CHG's delivery of the test kits to a common carrier.

---

[8] Since VRC wired the money, defendants have had many opportunities "to confirm that they have not fraudulently taken the $2,449,440.00 Purchase price, and that Defendants have in fact shipped the Covid Test Kits." [Ex. 1 ¶ 31 (p. 6)] They have not provided an answer.

[9] Sternberg is an attorney, licensed in Texas and Louisiana. The SPA designated him and his firm as the "escrow agent." [Gilberti Dcl. Ex. 4] The SPA detailed his role and obligations. His duties were separate and independent from "seller's duties." In his deposition, he agreed that that was his role, and he knew it. And the SPA's representation that he would not release the $2,449,440 until defendants provided evidence that they had delivered the test kits to a common carrier provided VRC a sense of comfort.

VRC's complaint states these facts in detail, including specific dates, times and events. It also alleges all the elements of fraud in the inducement, common-law fraud and conspiracy. Together, they state sufficient facts to support VRC's claims. In the end, VRC did not receive any test kits, and defendants took its $2,449,440.

In *American Environmental*, the Court found these same facts compelling. [Gilberti Dcl. Ex. 5] This Court should do the same here.

### C. Because Defendants Never Signed the Agreement, the Allegations in the Complaint Amplify, Not Undermine, the Agreement.

The Sternberg defendants also argue that: (1) "The Allegations in the Complaint are Undermined by the Agreement"; and (2) "Sternberg Had No Obligation to Perform the Seller's Duties Under the Agreement." [Deft. Br. Pt. I, B (pp. 17-18)]

These arguments ignore their admission that "the Sternberg Defendants are neither parties nor signatories to the contract at issue, titled 'Sale and Purchase Agreement.'" [Deft. Br. "Preliminary Statement" (p. 1)] As a result, they cannot claim any right under the SPA or credibly argue that it undermines VRC's allegations. In fact, not signing the agreement was a calculated action – part of defendants' scheme to defraud VRC.[10] By not signing, defendants could have plausible deniability so that, if their fraud scheme was detected, they could stand up in court and say, with a straight face, they had no contractual obligation to VRC.

Even if there were a legally-binding contract, Sternberg's representations in the SPA are part of the fraud. [Gilberti Dcl. Ex. 4, ¶ 6 (p. 1)] He wrote it. He promised not to release VRC's money until he verified that the test kits were delivered to a common carrier. He admitted that he

---

[10] In *American Environmental*, the Court held that, because the Sternberg defendants had not signed the SPA, they had no rights under it. [Gilberti Dcl. Ex. 5] Further, the Court held that the allegations of fraud in the inducement and fraud were sufficient to proceed.

19

released the money without confirming the delivery. As a result, he not only violated his fiduciary duty to VRC, he was also a critical player in defendants' scheme to take VRC's money and not deliver the test kits.

For these reasons, defendants' argument on this point is baseless.

### D. The Economic Loss Doctrine Does Not Bar the Common Law Fraud Claim.

Sternberg also argues that the economic loss doctrine bars VRC's fraud claim. [Deft. Br. Pt. I, D (pp. 18-19)] "Under New Jersey law, a tort remedy does not arise from a contractual relationship unless the breaching party owes an independent duty imposed by law. *Saltiel v. GSI Consultants, Inc.*, 170 N.J. 297, 316 (2002). As this Court explained in *Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co.*, 226 F. Supp. 2d 557, 564 (D.N.J. 2002), 'claims for fraud in the performance of a contract . . . are not cognizable under New Jersey law.'" [Deft. Br. Pt. I, D (pp. 18-19)]

This doctrine does not apply here for two main reasons. First, as defendants admit, they never signed the SPA. [Deft. Br. "Preliminary Statement" (p. 1); Gilberti Dcl. Ex. 4]. Without a binding contract, the economic loss doctrine does not and cannot apply.

Second, and equally important: "While New Jersey courts have applied the economic loss doctrine in the strict liability and negligence contexts, *see, e.g., Alloway v. Gen. Marine Indus., L.P.*, 149 N.J. 620 (1997), *Spring Motors Distribs., Inc. v. Ford Motor Co.*, 98 N.J. 555 (1985), '[n]o New Jersey Supreme Court case [has held] that a fraud claim cannot be maintained if based on the same underlying facts as a contract claim.' *Gleason v. Norwest Mortg., Inc.*, 243 F. 3d 130, 144 (3d Cir. 2001)." *JD James Constr. v. BDP Landscaping*, 2020 N.J. Super. Unpub. LEXIS 1739 *14-16 (App. Div. 2020). [Gilberti Dcl. Ex. 1]

When New Jersey federal courts have "permitted a fraud claim to proceed with a breach of

contract claim" as an exception to the economic loss doctrine, the cases "generally appear to have involved a fraud in the inducement of a contract" as opposed to "fraud in the performance of a contract . . . ." *G&F Graphic Servs. v. Graphic Innovators, Inc.*, 18 F. Supp. 3d 583, 593 (D.N.J. 2014), *quoting Bracco Diagnostics, Inc.*, 226 F. Supp. 2d at 563. As a result, "the fraud in the inducement exception to the economic loss doctrine" has emerged, and New Jersey federal courts have consistently applied it to sustain fraud claims in breach of contract cases. *Id.* ("Accordingly, the Court holds that the fraud in the inducement exception to the economic loss doctrine applies to [plaintiff's] common law fraud claim. [defendant's] Motion to Dismiss on this ground will be denied").

"The distinction between fraud in the inducement and fraud in the performance of a contract" is "the conceptual distinction between a misrepresentation of a statement of intent at the time of contracting, which then induces detrimental reliance on the part of the promisee, and the subsequent failure of the promisor to do what he has promised." *Bracco Diagnostics, Inc.*, 226 F. Supp. 2d at 563, *quoting LoBosco v. Kure Eng'g Ltd.*, 891 F. Supp. 1020, 1032 (D.N.J. 1995). In "recognizing the . . . distinction," the "'critical issue' with regard to economic loss 'is whether the allegedly tortious conduct is extraneous to the contract.'" *Id.* at 564.

VRC asserts both fraud in the inducement and a fraud separate and apart from any contractual obligations – even assuming that the contract is legally effective.

As a result, the economic loss doctrine does not apply.

### E. The Attorney-Immunity Doctrine Does Not Bar These Claims.

The Sternberg defendants next argue that, because they are citizens of, and licensed in Texas, Texas' attorney-immunity law bars any liability for these claims. [Deft. Br. Pt. I, E, (pp. 19-22)] They rely on the Texas Supreme Court decision in *Cantey Hanger, LLP v. Byrd*, 467

S.W.3d 477 (Tex. 2015).

However, this doctrine does not apply for three independent reasons. First, New Jersey law, not Texas law, applies here because: (1) they admit they did not sign the SPA; and (2) they cannot claim rights under the choice of law provision in the SPA (including this immunity provision) that they did not sign. [Deft. Br. "Preliminary Statement" (p. 1); Gilberti Dcl. Ex. 4]

Second, New Jersey does not recognize an attorney-immunity doctrine or have any analogous one.[11]

Third, even if Texas law did apply, the doctrine would not. In *Cantey Hanger*, 467 S.W.3d at 484, the Court stated:

> Fraud is not an exception to attorney immunity; rather, the defense does not extend to fraudulent conduct that is outside the scope of an attorney's legal representation of his client, just as it **does not extend to other wrongful conduct outside the scope of representation**. (Emphasis added)

In this case, VRC was never Sternberg's client. As a result, the fraud is outside both "the scope of his representation of his client [CHG]" and outside the proper legal representation of anyone. And the doctrine does not apply.[12]

**F. VRC's Participation Theory Has Sufficient Factual Basis.**

Once again, Sternberg argues that VRC's factual allegations are insufficient to support VRC's participation theory. [Deft. Br. Pt. II (pp. 22-23)]

Under the participation theory, "a director or officer of a corporation is individually liable

---

[11] The Sternberg defendants cite and otherwise rely on New Jersey law and federal cases for virtually all their other arguments. This reliance supports VRC's position that New Jersey law, rather than Texas, law applies, even on this point.

[12] The Texas Court also held that "an attorney's participation in 'independent fraudulent activities' is considered 'foreign to the duties of an attorney' and is not shielded from liability." *Id.* at 483, *quoting Alpert v. Crain, Caton & James, P.C.*, 178 S.W.2d 398, 406 (Tex. App. 2005).

22

for his or her own tortious acts even when those acts are committed in connection with or in furtherance of the corporate business." *Saltiel v. GSI Consultants, Inc.*, 170 N.J. 297 at 303-04 (2002) ("[T]he essence of the participation theory is that a corporate officer can be held personally liable for a tort committed by the corporation when he or she is sufficiently involved in the commission of the tort"); *State, Dep't of Envtl. Prot. v. Ventron Corp.*, 94 N.J. 473, 500 (1983) (holding that veil piercing is appropriate where an individual uses a corporation as his or her *alter ego* and abuses the corporate form to defeat the ends of justice, perpetuate a fraud, accomplish a crime or otherwise evade the law).

The Sternberg defendants ignore the substance, detail and strength of VRC's allegations of fraud. [Gilberti Dcl. Ex. 1 ¶¶ 81-98 (pp. 13-15)] They state that both Gross and Sternberg, individually, made false statements about the delivery of the test kits to a common carrier and that they would not release VRC's money until they verified that fact. [Ex. 1 ¶¶ 81-90 (pp. 13-14)] These statements advanced the fraud scheme and the conspiracy's goal. Relying on these misrepresentations, VRC wired its money to Sternberg. These misrepresentations enabled defendants to take VRC's money and to prevent and delay detection of their fraud. [Ex. 1 ¶ 91 (p. 14)] Both Gross and Sternberg, personally, used their "entities" to shield their individual fraud.

The complaint sufficiently identifies individual fraudulent acts of Gross and Sternberg to sustain the participation theory.

### G. The Complaint Alternately and Properly Alleges Breach of Contract and Unjust Enrichment.

Contrary to their other arguments, the Sternberg defendants again argue that their failure to sign the SPA absolves them from liability to VRC – this time as a defense to unjust enrichment. [Deft. Br. Pts. III, A and B (pp. 24-25)] However, the signing or existence of a contract is not

critical to the claim of unjust enrichment.

To establish unjust enrichment, "a party must demonstrate that the opposing party 'received a benefit and that retention of that benefit without payment would be unjust.'" ***Thieme v. Aucoin-Thieme***, 227 N.J. 269, 288 (2016). Plaintiff must "show that it expected remuneration from the defendant at the time it performed or conferred a benefit on [the] defendant and the failure of remuneration enriched [the] defendant beyond its contractual right." ***Id.***

In this case, VRC's allegations go far beyond unjust enrichment arising out of a contractual relationship. VRC alleges that the Sternberg defendants were coconspirators and that the conspiracy netted the coconspirators $2,449,440 of VRC's money – without providing anything in return: they did not deliver any test kits. [Gilberti Dcl. Ex. 1 ¶¶ 67-75 (pp. 11-12)] Permitting defendants to keep their proceeds of their fraud is textbook unjust enrichment.

### H.   The Sternberg Defendants Are Subject to Personal Jurisdiction in New Jersey.

The Sternberg defendants also argue that, because the SPA contains a forum selection clause, this Court does not have personal jurisdiction over them, and the Court should transfer the case to the Southern District of Texas. [Deft. Br. IV (pp. 26-39); Pt. V (pp. 39-40)][13] Specifically, they cite paragraph 13, which states:

> This Agreement shall be governed by the laws of the State of Texas and the Parties agree on the Texas State District Courts of Harris County, Texas, or other Seller designated venue which shall have exclusive jurisdiction of any dispute arising out of or related to the Agreement.

[Gilberti Dcl. Ex. 4 ¶ 13] This provision applies **only if** the SPA binds the parties. Once again, their admitted failure to sign the SPA guts this argument.

---

[13] Once again, they argue that the contract is binding despite their admission to the contrary – that they were not signatories or parties to the SPA. [Deft. Br. "Preliminary Statement" (p. 1)]

### 1. The Legal Standard for "Specific Jurisdiction."

In addition, to defeat a motion to dismiss asserting no personal jurisdiction, a plaintiff need only establish a *prima facie* case, accepting all factual allegations as true. ***Carteret Sav. Bank, FA v. Shushan***, 954 F.2d 141, 142 n.1 (3d Cir. 1992); ***Miller Yacht Sales, Inc. v. Smith***, 384 F.3d 93, 97 (3d Cir. 2004).

A New Jersey district court generally looks to state law in determining whether personal jurisdiction over a nonresident defendant may be obtained. ***Fed. R. Civ. P. 4(e)***; *see Dent v. Cunningham*, 786 F.2d 173, 175 (3d Cir. 1986). ***N.J. Rule*** 4:4-4 authorizes courts to exercise jurisdiction over a defendant to the fullest extent permitted by the United States Constitution. ***Charles Gendler Co., Inc. v. Telecom Equipment Corp.***, 102 N.J. 460, 469 (1986).

New Jersey's long-arm jurisdiction statute extends personal jurisdiction to a non-resident defendant "to the uttermost limits permitted by the United States Constitution." ***Avdel Corp. v. Mecure***, 58 N.J. 264, 268 (1971). *See also* ***Moon Carrier v. Reliance Ins. Co.***, 153 N.J. Super. 312, 315-16 (L. Div. 1977). New Jersey district courts have upheld *in personam* jurisdiction over non-resident defendants consistent with due process. ***Kiah v. Singh***, 2009 U.S. Dist. LEXIS 321, at *6-7 (D.N.J. 2009) ("In New Jersey, the appropriate exercise of personal jurisdiction over non-resident defendants is allowed to the fullest extent permitted by the Due Process Clause of the Fourteenth Amendment"), *citing* ***Miller Yacht***, 384 F.3d at 96; ***Colvin v. Van Wormer Resorts, Inc.***, 2008 U.S. Dist. LEXIS 102147, at *4-5 (D.N.J. 2008); ***Pathfinder Mgmt. v. Mayne Pharma PTY***, 2008 U.S. Dist. LEXIS 61081, at *10-11 (D.N.J. 2008); ***In re Aquino***, 2008 U.S. Dist. LEXIS 101470, at *4-5 (D.N.J. 2008); *see also* ***Bayway Refining Co. v. State Utilities, Inc.***, 333 N.J. Super. 420, 428 (App. Div. 2000), *quoting* ***N.J. Rule*** 4:4-4(b)(1).

the Third Circuit has upheld "*in personam* jurisdiction over a non-resident defendant

'consistent with due process of law.'" *Bayway*, 333 N.J. Super. at 428, *quoting N.J. Rule* 4:4-4(b)(1). The determination of personal jurisdiction is fact-specific and is done on "a case-by-case basis." *Id.* at 429. The interests of judicial efficiency and economy favor having all defendants together in one forum to determine whether their acts breached a contract and amounted to fraud. *Rodin Properties-Shore Mall, N.V. v. Cushman & Wakefield, Inc.*, 49 F. Supp. 2d 709, 723 (D.N.J. 1999) ("the most efficient way to resolve the present dispute is for all of the claims to be heard in a single forum").

In addition, allegations of conspiracy may extend personal jurisdiction to coconspirators, like the Sternberg defendants, if the New Jersey court has jurisdiction over their coconspirators. *See VIST Fin. Corp. v. Tartaglia*, 2010 U.S. Dist. LEXIS 70503, at *13-14 (D.N.J. 2010), *quoting Wortham v. KarstadtQuelle AG*, 320 F. Supp. 2d 204, 222 (D.N.J. 2004); *Rush v. Savchuk*, 444 U.S. 320, 332 (1980) ("the parties' relationships with each other may be significant in evaluating their ties to the forum"); *see also State, Dep't of Treasury, Div. of Inv. ex rel. McCormac v. Qwest Communic'ns Int'l., Inc.*, 387 N.J. Super. 487, 503-05 (App. Div. 2006), *cert. denied sub nom. Szeliga v. N.J. Dep't of Treasury*, 550 U.S. 935 (2007), *citing Matsumoto v. Matsumoto*, 335 N.J. Super. 174, 180-85 (App. Div.), *aff'd and modified on other grounds*, 171 N.J. 110 (2000).

To establish "specific jurisdiction" over a defendant, a plaintiff must establish three elements:

(1) "the defendant must have purposefully directed [its] activities at the forum";

(2) "the litigation must arise out of or relate to at least one of those activities"; and

(3) if the first two requirements are met, the exercise of jurisdiction must "otherwise comport[] with fair play and substantial justice." *O'Connor v. Sandy Lane Hotel Co, Ltd.*, 496 F.3d 312, 317 (3d Cir. 2007).

26

Significantly, a "single contact that creates a substantial connection with the forum can be sufficient to support the exercise of personal jurisdiction over a defendant." *Miller Yacht Sales*, 384 F.3d at 96, *citing Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 n.18 (1985).

**2. The Facts Here Provide an Adequate Basis for "Specific Jurisdiction."**

In its complaint, VRC alleges that the Sternberg defendants "purposefully directed [their] activities at the forum," New Jersey, several different ways.

First, Sternberg wrote the SPA that created the framework for the fraud scheme. It specifically noted VRC's location in New Jersey.

Second, Sternberg sent the SPA to VRC in New Jersey.

Third, in the SPA, defendants agreed to deliver the goods to VRC in New Jersey.

Fourth, as the SPA required, VRC sent $2,449,440 from New Jersey to Sternberg's trust account.

Fifth, and perhaps most important, when Sternberg released VRC's money without confirming delivery to a common carrier, the effect of his action was felt (significantly) in New Jersey.

Taken together, by these actions, the Sternberg defendants "purposely directed [their] activities at" New Jersey; "the litigation [has arisen out of] or relate[s] to at least one of those activities"; and the exercise of jurisdiction in New Jersey "comports with fair play and substantial justice." Depriving VRC of its right for redress here would be unfair and would permit the defendants to profit both substantively and procedurally from their acts of fraud.

**I. The Forum Selection Clause Is Not Valid and Does Not Apply.**

After admitting they did not sign the SPA [Deft. Br. "Preliminary Statement" (p. 1)], the Sternberg defendants hypocritically turn around and argue that: (1) the SPA's "forum selection

27

clause" binds VRC; and (2) as a result, the Court should apply Texas law and transfer the case to Texas. [Deft. Br. Pt. III, A (p. 24)]

### 1. The Legal Standard Applicable to Forum Selection Clauses.

In a diversity case, a federal court must apply the substantive law of the state whose law governs the action. ***Orson, Inc. v. Miramax Film Corp.***, 79 F.3d 1358, 1371 n.15 (3d Cir. 1996). In this case, that is New Jersey, and under its law, the existence of a valid and enforceable contract, in the first instance, is determined by state law. To be enforceable, a contract's terms must be sufficiently definite, and the parties must have manifested an unqualified intention to be bound by those terms. ***Weichert Co. Realtors v. Ryan***, 128 N.J. 427, 435 (1992).

"In order to enforce a forum selection clause, the Court must first determine that the [contract itself] is valid." ***Polytek Development Corp. v. 'Doc' Johnson Enterprises***, 32 F. Supp. 3d 243, 248 (E.D. Pa. 2001), *citing **Jumara v. State Farm Ins. Co.***, 55 F.3d 873, 877-78 (3d Cir. 1995). There is no presumption that a valid and enforceable contract exists where there are allegations of fraud. ***M/S Bremen v. Zapata Off-Shore Co.***, 407 U.S. 1, 12-13 (1972) ("a freely negotiated private international agreement, unaffected by fraud, undue influence, or overweening bargaining power . . . should be given full effect").

To overcome a presumptively valid forum selection clause, the opponent must make a "strong showing" that the clause is unreasonable by proving that:

(1) "it is the result of fraud or overreaching";

(2) "enforcement would violate strong public policy of the forum"; or

(3) "enforcement would . . . result in jurisdiction so seriously inconvenient as to be unreasonable." ***Polytek***, 32 F. Supp. 3d at 248, *quoting **Moneygram Payment Sys. v. Consorcio***

*Oriental, SA*, 65 F. App'x 844, 846 (3d Cir. 2003).

For these purposes, "unreasonableness" means "more than 'mere inconvenience or additional expense.'" *Id., quoting Banc Auto, Inc. v. Dealer Servs. Corp.*, 2008 U.S. Dist. LEXIS 67514, at *8-9 (E.D. Pa. 2008).  Rather, the opposing party must show that it would be deprived of its day in court or would be completely unable to litigate the case if permitted to go forward in the selected forum. *Id.*

Here VRC's complaint asserts that the SPA was an instrument of the fraud. *Moneygram*, 65 F. App'x at 846.

### 2. The Forum Selection Clause Does Not Apply to Sternberg.

The Sternberg defendants argue that Texas law applies.  Before reaching that point, they must prove that a legitimate forum selection clause existed ***and*** a conflict between New Jersey law and Texas law.[14]  They have not. [Deft. Br. "Preliminary Statement" (p. 1)]  As a result, no further analysis is necessary.

First, "the basic features of a contract" are "offer, acceptance, consideration, and performance by both parties." *Goldfarb v. Solimine*, 245 N.J. 326, 339 (2021), *quoting Shelton v. Restaurant.com, Inc.*, 214 N.J. 419, 439 (2013).  The Sternberg defendants admit that they did not sign the SPA. [Gilberti Dcl. Ex. 4]  As a result, no contract exists.

In addition, the Sternberg defendants have not shown any conflict between New Jersey and Texas law on this point.  As a result, they cannot claim any right or benefit under that

---

[14] "If two jurisdictions' laws are the same, then there is no conflict at all, and a choice of law analysis is unnecessary." *See Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 229 & n.7 & 230 (3d Cir. 2007).  If there is no conflict, a court may refer to both "states' laws interchangeably. *Id.*

agreement (if it exists), no matter which law governs.

Second, even if the forum selection clause were valid and Sternberg could claim rights under it, VRC alleges fraud in the inducement which negates the clause and undercuts the Sternberg defendants' argument.

Significantly, in ***American Environmental***, the Court rejected these same arguments from these same defendants resulting from a similar Covid test kit fraud conspiracy in which defendants took $1,965,000 for test kits that defendants never delivered.

That Court held that: (1) "there never was a valid and signed contract, and that Defendants took Plaintiff's money as part of the scheme"; and (2) "if a contract was never signed, wholly lacking in consideration due [to] zero performance by Defendants, and a part of a fraudulent scheme, then the corollary is that ***every*** provision in the contract is invalid." (emphasis in original) [Gilberti Dcl. Ex. 5 (p. 2/3)]

The Court rejected defendants' claim that: "Plaintiff has failed to meet the heightened pleading requirement for allegations of fraud as set forth in Federl Rule of Civil Procedure 9(b) in order to set aside the forum selection clause." [Ex. 5 (p. 2/3)] The Court held that "Plaintiff has sufficiently plead, with particularity, facts of fraud such that the entire contract, including the forum selection clause's validity, is called into question." [Ex. 5 (p. 3/3)]

The Court also rejected defendants' challenge to venue and their motion to transfer the case to the Southern District of Texas relying on ***Polytek Dev. Corp. v. 'Doc' Johnson Enters.***, 532 F. Supp. 3d 243, 251 (E.D. Pa. 2021). The Court found that, even if venue were proper in Texas, as pointed out by the Third Circuit, the venue statute does not require that a court determine the "best" forum. ***Cottman Transmission Sys. Inc. v. Martino***, 36 F.3d 291, 294 (3d Cir. 1994), or even to weigh where among many forums "the most substantial events," occurred. ***Superior Precast, Inc.***

*v. Safeco Ins. Co. of Am.*, 71 F. Supp. 2d 438, 444 (E.D. Pa. 1999). *See also FerraTex, Inc. v. U.S. Sewer & Drain, Inc.*, 121 F. Supp. 3d 432, 438 (D.N.J. 2015) ("there can be more than one place in which a 'substantial part' of the acts or omissions occurred. The Third Circuit has said that a court is not required to determine the 'best' forum. Rather, multiple fora can serve as appropriate venues under § 1391(b)(2)"), *citing Cottman*, 36 F.3d at 294; *Park Inn Int'l, L.L.C. v. Mody Enters.*, 105 F. Supp. 2d 370, 376 (D.N.J. 2000).

For identical reasons, this Court should find that the forum selection clause does not apply, there is personal jurisdiction over these defendants and that venue in New Jersey is proper.

## CONCLUSION

Because VRC has alleged sufficient facts to state causes of action for fraud in the inducement, common-law fraud, and conspiracy, it is respectfully submitted that this Court should deny Sternberg' motion. Further, the Court should reject defendants' other claims and misguided attempt to avoid personal jurisdiction consistent with the determination rendered by the *American Environmental* Court. [Gilberti Dcl. Ex. 5]

JARDIM MEISNER SALMON SPRAGUE
& SUSSER, P.C.


BY: *Michael V. Gilberti*
Michael V. Gilberti
Bennet Susser

Dated: July 25, 2025

31