UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____

VRC CONSULTING INC. d/b/a
VRC MEDICAL SERVICES, INC.,

    Plaintiff,

       vs.

MANFRED STERNBERG, ESQUIRE
and MANFRED STERNBERG &
ASSOCIATES, PC, and CHARLTON
HOLDINGS GROUP, LLC, and
SAMUEL GROSS,

    Defendant.
_____

CIVIL ACTION NUMBER:

2:24-cv-710-MEF

Oral Argument

Frank R. Lautenberg Post Office and Courthouse
Two Federal Square
Newark, New Jersey  07102
October 3, 2025

B E F O R E:              THE HONORABLE MICHAEL E. FARBIARZ,
                       UNITED STATES DISTRICT COURT JUDGE

A P P E A R A N C E S:

JARDIM, MEISNER, SALMON, SPRAGUE & SISSER P.C.
BY:  MICHAEL V. GILBERTI, ESQ.
    30B Vreeland Road, Suite 100
    Florham Park, New Jersey  07932

      appeared on behalf of the Plaintiff;

Lisa A. Larsen, RPR, RMR, CRR, FCRR
Official Court Reporter
Lisa_Larsen@njd.uscourts.gov
(973)776-7741

Proceedings recorded by mechanical stenography.
Transcript produced by computer-aided transcription.

*United States District Court*
*District of New Jersey*

A P P E A R A N C E S: (Cont'd.)

LEWIS BRISBOIS BISGAARD & SMITH LLP
BY:  ADAM T. HOFFMAN, ESQ.
     One Riverfront Plaza
     8th Floor
     Newark, New Jersey  01702

          appeared on behalf of the Defendants
          Manfred Sternberg, Esq. and Manfred Sternberg &
          Associates, PC.

(PROCEEDINGS held in open court before the HONORABLE MICHAEL E. FARBIARZ, United States District Court Judge, on October 3, 2025.)

THE COURT:  We are here for oral argument in *VRC Consulting, Inc. v. Manfred Sternberg, et al.*

Appearance, please, for the record, beginning with the plaintiff.

MR. GILBERTI:  Good morning, Your Honor.  Mike Gilberti for Plaintiff VRC.

MR. HOFFMAN:  Good morning, Your Honor.  Adam Hoffman for Defendants Manfred Sternberg and Manfred Sternberg & Associates, PC.

THE COURT:  Mr. Gilberti and Mr. Hoffman, thanks a lot.

Mr. Hoffman, it's your motion.  Why don't you address it.

MR. HOFFMAN:  Thank you, Your Honor.

The order that Your Honor issued setting this argument indicated that Your Honor wanted to hear about the jurisdictional element.  Is that --

THE COURT:  Jurisdiction and transfer, right.

MR. HOFFMAN:  So, Your Honor, if you recall, we initially filed a motion to dismiss which resulted in Your Honor directing the parties to engage in limited jurisdictional discovery.  We completed that discovery.

THE COURT:  Right.

*United States District Court*
*District of New Jersey*

MR. HOFFMAN:  At this point the burden is on plaintiff to establish that they have jurisdiction over --

THE COURT:  Mr. Hoffman, can I ask you something?

MR. HOFFMAN:  Yes.

THE COURT:  Did any one sign the form selection clause? There's an agreement, a settlement purchase agreement that you rely on.

Did anyone sign that?

MR. HOFFMAN:  The plaintiff signed that agreement.

THE COURT:  What is the possible relevance of an agreement signed by one party and not another?  I have just never heard anyone make such an argument.

MR. HOFFMAN:  As it relates to the venue provision?

THE COURT:  As it relates to anything.  You're invoking a contract that two parties did not sign.  How can that be relevant?

MR. HOFFMAN:  Well, the entire case is about the transaction related to that agreement.

THE COURT:  Different question, different question.  I appreciate the argument that maybe the locus of the case is in Texas, maybe it has no connection to New Jersey, but you cite in terms of the jurisdictional argument a forum selection clause that only one side signed.

How can it be enforceable with only one side having signed it?

MR. HOFFMAN:  Well, Your Honor, that's a secondary argument related to venue.

THE COURT:  I appreciate at that.  I want to start with that because it's head-shaking to me.

This whole case is obviously very different if there is a forum selection clause, which is why I presume you mentioned it in your briefing, but it's only signed by one side.  I don't know of any law that tells me that agreements that are signed by one side are enforceable.

MR. HOFFMAN:  I understand what you're saying, Your Honor.  The agreement -- the only thing that we could say on that point is that the agreement is what this case is about, the transaction that the plaintiff claims the seller did not adhere to.

That contract was signed by the plaintiff, they expected the defendant, not my clients but my clients' client, to comply with the terms of that agreement and that agreement had a venue selection clause for -- that any disputes would be brought in Texas.

THE COURT:  Right.

MR. HOFFMAN:  That was my clients' expectation.

THE COURT:  Right, but -- okay.  Maybe expectations matter for jurisdictional purposes.  There is certainly in the specific jurisdiction jurisprudence, some focus on what the defendant expected, but that's quite a bit different than

*United States District Court*
*District of New Jersey*

arguing this as you have, which is to suggest that there is a forum selection clause that changes the analysis for jurisdictional and 1404 transfer purposes.  This is a different argument.

Put aside any argument in your presentation to me, Mr. Hoffman, that the SPA requires either a transfer or requires the divestiture of jurisdiction here, just because it's an unsigned document.

Maybe it has some effect on foreseeability, which is I think the best thing you could make of it.  Maybe it has some affect on foreseeability, but you've cited no case for the idea that an unsigned forum selection clause gets bootstrapped into the world by means of a foreseeability argument.

So I think you're on shaky ground on that without a case, and I don't see one.  Why don't you continue with the argument without leaning on that piece.

MR. HOFFMAN:  Sure.  As it relates to personal jurisdiction over Manfred Sternberg and Sternberg & Associates, PC, which does not necessarily rely on that venue selection clause, Mr. Sternberg is an attorney down in Texas. He's licensed to practice in Texas and Louisiana.  He lives in Texas.  The firm has its primary offices in Texas.

Plaintiffs have not established that Mr. Sternberg has any contact with the state of New Jersey.  They focus primarily on the transaction at issue in this action which

Mr. Sternberg was not a party to.

He was the seller's attorney.  He had a limited role as the seller's attorney --

THE COURT:  Hold on.  That's to adopt your view of the facts.

Isn't the plaintiff's view of the facts that there is a fraudulent arrangement?  They call it a conspiracy.  That's the language of the criminal law, not really relevant here. But there's a fraudulent joint arrangement between all of the defendants to rip off the plaintiff and everyone knows where the plaintiff is.

Isn't that directing -- that may be right or it may be wrong.  It may turn out that your client is who you say he is, which is to say just a lawyer working on a business deal, but the plaintiffs have alleged that the whole business deal was cooked up to defraud a defendant -- excuse me, to defraud a plaintiff in New Jersey and that the Sternberg defendants knew where the plaintiff was.

Why does that not do it in terms of jurisdiction?  I'm not sure I understand why that's not enough.

MR. HOFFMAN:  Well, Your Honor, we believe that the plaintiffs need to establish by a preponderance of the evidence now that we've completed jurisdictional discovery that Mr. Sternberg personally had contact with the state of New Jersey.  The co-conspirator theory of personal

*United States District Court*
*District of New Jersey*

jurisdiction is not sufficient under New Jersey law.

I believe we cite a case --

THE COURT:  I saw the case you cited.  I think it's really far afield.  I read that case.  I get it.

First of all, the legal standards here are not really state law standards.  They're about federal common law standards, as you understand, because New Jersey's personal jurisdiction laws run to the edge of the federal constitution.

I think the difficulty is fundamentally -- and I'm not knocking how jurisdictional discovery may or may not have gone or how the argument went here.

The papers from both sides are wonderful, I think.  But the thing that's a little strange is there is this fighting in the papers about whether Mr. Corba, if I have that name right --

MR. GILBERTI:  Yes.

THE COURT:  -- is a liar or not.  There are some pretty strong arguments made about his credibility, very strong arguments.

But I think the fundamental problem with those arguments is that they speak to the question of whether or not the Sternberg defendants and Mr. Sternberg himself were joint venturers, were partners.

And that's interesting maybe, important maybe, but regardless of what their actual legal relation was,

Mr. Hoffman, the issue you skip over is sort of the most important one.

I mean, you kind of announce in your papers that, well, if all Mr. Sternberg was doing was participating as a lawyer in his client's work, then there can't be jurisdiction here, but there's no citation for that and that's for all the marbles.

I get all the fighting a little bit downstream from that about whether this is a joint venture or partnership, whether Corba can or can't be trusted; but the first problem you have to deal with is if a lawyer conspires, as is alleged, I'm not saying it's true of course, but if a lawyer conspires to target someone and the lawyer knows that it's fraud, as alleged, and knows that someone is in New Jersey, as alleged, you can't skip over the personal jurisdiction question.

That's what your papers do.  They just say of course the Sternberg defendants cannot -- there's no jurisdiction in New Jersey if Mr. Sternberg was acting as a lawyer.

I don't know why that's right.

MR. HOFFMAN:  Your Honor, I think also a point that has to be considered is the allegation against Mr. Sternberg related to that alleged fraud, which is that he prematurely released the purchase funds to his client, and the plaintiffs continue to misconstrue -- you know, there's documentary evidence, you just look at the agreement.  It's very plain

*United States District Court*
*District of New Jersey*

what his role was supposed to be.

THE COURT:  But this is an unsigned agreement.  Right?  You're asking me essentially to resolve the case as part of the jurisdictional transfer argument.  That's what this case is about, is whether or not that agreement is meaningful, whether it's part of a ruse.

How can I essentially resolve the case on the merits as part of the jurisdictional issue?

MR. HOFFMAN:  I understand that concern.  I think that all we have seen from the plaintiffs, who have the burden to establish personal jurisdiction, is the bare allegation that Mr. Sternberg was part of the fraud, but the only thing that they point to is that he prematurely released the funds which is -- it's just false.  It's patently false.

When you look at the documents, they say he wasn't supposed to release the funds until the goods were delivered to a common carrier, which is not what the agreement says at all.

Our argument is that it's not sufficient for them to just barely allege that he was part of the fraud without showing something to establish that he personally, not his client, had any contacts with the state of New Jersey.

The plaintiffs point to the fact that he sent the agreement to the plaintiff in New Jersey which is not true. There's no support for that.  He didn't do that.

Plaintiffs also claim that he was the escrow agent under the agreement.  They put that in quotes, but that's not what the agreement says.

THE COURT:  I'm going to pause you for a second.  Let me turn to your adversary.

So jurisdictional happened here in a certain way.  We are now post jurisdictional discovery.  What is the proof that there was a fraud here that Mr. Sternberg participated in?  What's the proof?

MR. GILBERTI:  Are we doing this for the contacts argument or liability argument?  Because you sort of bifurcated them.

THE COURT:  I did bifurcate them, but the problem is on the argument Mr. Hoffman is now pressing -- that's why I'm saying I'm not knocking how jurisdictional discovery went, but there is some way in which there needs to be some evidence of participation by Mr. Sternberg in the fraud to show connectivity to New Jersey.

So what is the evidence at this point of that?

MR. HOFFMAN:  The evidence is he wrote the agreement, the agreement said -- carries the address of our client in New Jersey, so he obviously knew that somebody in New Jersey was involved in this case.  He sent wire transfer instructions to the money and the money came to his account from New Jersey.

And to address the escrow agent for a moment, he could have said trust account.  He's a lawyer.  He put:  Escrow account.

If you look at the exhibit, the standard operating procedures --

THE COURT:  But this is not really the question.

MR. GILBERTI:  I'm sorry.  I'm getting afield.

THE COURT:  You're not.

MR. GILBERTI:  Also --

THE COURT:  Mr. Gilberti, the question is what is the evidence at this point of fraud?  That is evidence of connections to New Jersey that look like a pretty ordinary business relationship.

The question is what is the fraud?  What is the evidence of the fraud?

MR. GILBERTI:  We have alleged the fraud in the complaint.

THE COURT:  But this is the problem.  You're using the word "alleged."  I'm asking you the word "evidence."  We're lawyers.

You had jurisdictional discovery.  I'm asking you for evidence and you're falling back on the word "allegation."  Answer the question about evidence.

MR. GILBERTI:  It comes from Mr. Corba's testimony.  If you're gonna decide issues of fact at this point, Corba's

*United States District Court*
*District of New Jersey*

testimony was he had conversations that said Mr. Sternberg was a participant or joint venturer in it, so that would at least suggest it.

Again, we're not at summary judgment, we're not at -- but that should be sufficient to get at least started down the road.  Then you got the post situation where he said:  Oh, yeah, the stuff's gonna be delivered.

This is laid out both in our complaint and in Mr. Corba's testimony.  And he sort of covered the tracks after the fact.  He took the money, he released the money, our theory is, before he got any clarification or any indication.  And he admits this in his deposition.  He released the money without even know whether the goods existed or whether they were anyplace.

THE COURT:  Let me hold you for a second.  Why is that not enough?

Corba may or may not be telling the truth, and Mr. Hoffman does an extensive job, an extensive job of attacking Mr. Corba's credibility, but why is that not enough at this stage to suggest that there was a fraud that Mr. Sternberg was involved in and was directed at New Jersey?

Why does that not do the trick?

Your answer is essentially:  But lawyers can't get in trouble in these settings.

But, first, there's no legal citation for that, and I

doubt that's the correct proposition.  Second of all, whether it holds up in the end, I'm not sure I know why Mr. Corba's proffered information is not enough.

MR. HOFFMAN:  Because his testimony is all over the place and it's contradictory.

THE COURT:  So you think I should have a hearing and decide if he's telling the truth or not?  Is that how you think this goes?

MR. HOFFMAN:  I think that now that we have gone through jurisdictional discovery and they're relying upon Mr. Corba's testimony and the burden is a preponderance of the evidence, it's just not credible what Mr. Corba is saying because he contradicts himself --

THE COURT:  What's the answer to my question?  Do you think I should have a hearing now at a motion to dismiss stage to resolve the facts?  I don't mean it rhetorically.  Is that your position?

That's the funniness of what's happened.  Jurisdictional discovery has gone forward.  The place that Mr. Gilberti is in is he's relying on Corba.  You've attacked Corba's credibility.

The question is, really, are we still in motion-to-dismiss-land in the sense that I should take Mr. Corba's statements as just true, or should I resolve the credibility of Mr. Corba, in which case I almost surely need

*United States District Court*
*District of New Jersey*

to have a hearing, which is a little bit of an odd fit for a 12(b)(6) context.

That's why I'm asking you is your position that I should have a hearing.  I don't know the answer to this question.  I think it's a tricky question.

MR. HOFFMAN:  If Your Honor is not convinced that the plaintiffs have by a preponderance of the evidence established jurisdiction, then --

THE COURT:  No, no, you're missing the question.  The question is whether in asking myself that question I need to take as true the evidence that has been put forward or if I should evaluate it.

If the former, if I take it as true and give the plaintiffs reasonable inferences, as one normally does in the 12(b)(6) context, well, then, they have done enough.  If the answer is I don't take it as true, then I'm asking you, if that's the case, what do I do?

MR. HOFFMAN:  I think the only thing the Court could do is have an evidentiary hearing to determine whether -- if the Court is relying solely on Mr. Corba's statements and there is significant credibility related to those statements, I think that the Court should hold an evidentiary hearing.

THE COURT:  What's your basis for that idea?  That's the question I'm asking.  I get it that those are the two possibilities, but I just laid them out and asked for your

views on them.

What I'm wondering is what is the law on that, which is to say we all understand that jurisdiction is a funny 12(b)(1) thing because it sometimes requires going outside the pleadings.

We have now gone outside the pleadings, and the question is, outside of the pleadings as we are, do I take what has been found in jurisdictional discovery, do I take it on its face as true or do I make factual determinations based on it?  Those are questions I don't know the answer to.

MR. HOFFMAN:  We do cite to law that after jurisdictional discovery the plaintiffs need to point to specific facts in the record.

THE COURT:  Right.  But they have done that.  The question is, whether I have to take what they have pointed to as true, as I would in a 12(b)(6) context, as I would in a Rule 56 context, or I'd engage in factfinding as to those things.

MR. HOFFMAN:  Your Honor, we do cite to a Third Circuit case that the Court, after jurisdictional discovery, does not need to assume that plaintiff's allegations are true and resolve all factual disputes in the plaintiff's favor.

So I think the Court has to look at everything that has been presented to it and determine whether the plaintiffs have satisfied their burden.

*United States District Court*
*District of New Jersey*

THE COURT:  Mr. Hoffman, you just don't have authority.  You haven't thought about this question, it seems like.  I get it.  But I've read your papers.  I understand that snippet from the Third Circuit.

The question is not whether or not I have to think about it or look at the whole body of information.  I understand I do.  The question is, do I take it as true or do I put Mr. Corba on the stand?

That question is not answered by the snippet in the Third Circuit cases, it's just not.  It sounds like you don't know the answer on your feet at this moment.  I get it.  No worries.

Mr. Gilberti, do you have a view on this?

MR. GILBERTI:  I believe that -- first off, I'm aware of no authority that permits you to do that at this point, and my position --

THE COURT:  That doesn't really tell me the answer.

MR. GILBERTI:  I understand it doesn't help you, but my position is it ought to be much more akin to a 12(b)(6) motion where you take it as true and we sort this out when we get down the road.

THE COURT:  But the problem with that, as I think you understand, is we could end up with a trial -- when do I get to figure out if there's jurisdiction here?

The problem is simply Mr. Corba might be lying, and if

*United States District Court*
*District of New Jersey*

he's lying, there's no jurisdiction; and also if he's lying, you lose at trial, I think.

MR. GILBERTI:  But the undisputed facts at this point is he wrote the agreement, he put New Jersey into the agreement, the money came from New Jersey, it came to his account.  After the fact, there was this statement about the stuff is on the truck.

Those three facts at least give some support for the contacts with New Jersey.  Now, whether the agreement had to get from him to New Jersey somehow, okay, for the moment we won't say that he sent it directly; but there's at least a circumstantial case there that it initiated with him and got to New Jersey and he knew it was going to New Jersey.

So it's not like there's no evidence of any contact in New Jersey and he's in Texas and there's a guard-all shield that says:  I don't know anything about New Jersey.

He wasn't kept in a soundproof booth without any indication.  There were definite indications that he knew things were going to New Jersey.

THE COURT:  Are you ever gonna serve the other defendants here?

MR. GILBERTI:  As I was telling Mr. Hoffman, I just got in the case and we're trying to sort out three or four cases for the same thing and we're trying to sort that one out, as well, Your Honor.  It's our intention to serve them, and

Mr. Hoffman has agreed to help us serve them.

THE COURT:  I'm sure Mr. Hoffman wants them served.  If the parties are lined up the way -- if the relationships are lined up the way Mr. Hoffman's client suggests they're lined up, then he emphatically wants them served.  This case was filed in 2024.

When did you come on?

MR. GILBERTI:  Us?

THE COURT:  Yes.

MR. GILBERTI:  About three months ago.

THE COURT:  What are you waiting for in serving the defendants?

MR. GILBERTI:  Again, we have been trying to get -- we have been fighting his motion.  There are other cases related to this that we have been involved in trying to get up to speed on as well.  We are working as well as we can.  We only have two attorneys dedicated to it.

THE COURT:  Okay.  When do you think you'll have them served?

MR. GILBERTI:  Hopefully, within 25 to 30 days, Your Honor.

THE COURT:  What is the reason not to transfer this case to Texas?

MR. GILBERTI:  Because the victim is up here, the harm is up here.  Going back at least to the clause, he was not

contemplated to be a signatory to the agreement, which was one of the additional things I wanted to mention.

Even though he didn't sign the agreement, he wrote the agreement, he wasn't supposed to be a party to the agreement, so he has no interest in transfer to Texas, at least from that respect.

From the standpoint to where the transaction occurred and where the witnesses are, up here is -- I believe the Court in the Eastern District of Pennsylvania found the same thing, that there was enough gravitas in that jurisdiction and in this case in New Jersey to keep it here.

THE COURT:  But the problem is a little more complicated than that.  It relates to the fact that you haven't served someone.

If this case is who it looks to be on the caption, then I hear you.  Then you have a case that is mainly about what you allege is a kind of direct defrauding of a New Jersey defendant, but if you opt to keep not serving the people who look to be the main defendants -- if you don't serve them, then this case looks a little different in terms of where, for example, the witnesses are gonna be.

If you don't serve those defendants, you have a case that is much more heavily Texas and New Jersey and not Texas, New York, New Jersey, or New Jersey.  So these are not unrelated questions as to what's going on with the service and

the question of the transfer.

Who are the witnesses to the alleged defrauding by the Sternberg defendants?  Where are the witnesses to that?

MR. HOFFMAN:  Well, obviously there's the Sternberg side and us, plus Gross, Weiss, and people like that.  If we serve them -- again, as I said, our primary role at this point has been to defend Mr. Hoffman's motion.

But, you know, if there was an issue -- the third defendants are not Texas defendants, so that again would sort of tend to minimize the effect on Texas or at least pull more of the case, as you pointed out, out of Texas.

So if we served them, then it would seem to me that that would keep us here, too.  Because when you start playing the game of where is the best place to do it, then everything points to New Jersey, at least is our position.

THE COURT:  There's just kind of a strange artificiality in this whole case in the sense that if you adopt the views of your adversary, Mr. Sternberg is a lawyer doing a lawyer's job and he's getting dragged into something where he just arranged in the most basic way to have an escrow or trust or whatever sort of payment transfer arrangement. That's what Mr. Hoffman's take is.  And of course it's not yours.

But at least in terms of the documents, it looks like it has a flavor of Mr. Hoffman's view of the world, which

makes me all the more puzzled why this case is a year and a half old and no one has bothered serving the entities and the people that look like the main defendants.

MR. GILBERTI:  I can't speak for my predecessor, Your Honor.  As I said, we've been trying to get up to speed. And understanding now that this is a problem, we will work on it posthaste.

Now, one additional thing, just to sort of address Mr. Hoffman's thing, in the deposition Mr. Sternberg said he's been representing these people since 2020 and he's written similar agreements.  And it's more than interesting that many of these have ended up in the same format.

You've got the case in the Eastern District of Pennsylvania and a variety of others that have resulted the same way.  People have sent money to his account --

THE COURT:  But, Mr. Gilberti, that's not more than interesting.  You're a criminal defense practitioner.  Nobody would ever suggest you were liable for your client's conduct.

MR. HOFFMAN:  I understand.

THE COURT:  So it's not really more than interesting. It's just sometimes lawyer's clients do things that are violative of the law or allegedly violative of the law.

It may turn out that Mr. Sternberg is actively involved in violations, it may turn out that he's not, I don't know, but it's not especially interesting that a couple times a

particular client is now in a litigation.  That's just not a very telling fact.

MR. GILBERTI:  I got you.

THE COURT:  I think we shouldn't make much of that here.

Remind me who the magistrate judge is on the case.  Forgive me for not remembering.  It's Judge Allen; right?

MR. HOFFMAN:  That's correct, Your Honor.

THE COURT:  Has there been any non-jurisdictional discovery in this case?

MR. GILBERTI:  Not that I'm aware of.

MR. HOFFMAN:  No, Your Honor.

THE COURT:  Look, here is my inclination:  It strikes me as strange to have a jurisdictional fight and a transfer fight that are pretty tied to the merits at this point, regardless of the answer to the question I put to you, Mr. Hoffman.  It's a little bit of strange situation.

The question I put to you, Mr. Hoffman, I think it's a tough question.  I don't know the answer.  I didn't put it to you rhetorically.

I think it's a tough question whether or not when I make factual decisions about jurisdictional facts and jurisdictional questions, I don't know offhand the answer to that.

But the thing that makes that especially tough here is

that in this case there's not a lot of divide between the jurisdictional facts and the merits facts, and that makes it an especially tricky question.  So that's a hard question with respect to jurisdiction transfer.

The other thing that's very tough is we're now proceeding down the road of a case that looks, it doesn't mean it's right, but it looks like a case where the key defendants would seem to be CHG and Mr. Gross.

I take Mr. Gilberti's point, which is he's been in the case for 90 days, resources are limited, undoubtedly, and he doesn't have a real view on why those entities haven't been served.  But it seems quite odd to try and resolve this case or to even think about a dispositive resolution of the case without having those entities be served.

On the other hand, you have Mr. Hoffman, I'm sure, inevitably says, "I don't want to waste my client's money on discovery," but Judge Allen has not had any non-jurisdictional discovery.

I wonder if the right way to think about this case looks something like this:  Mr. Gilberti, why don't you try and serve these other defendants.  I think what I'd be inclined to do is deny Mr. Hoffman's motions without prejudice.  I'll do it without prejudice, because if he wants at some later point to simply resuscitate them, he should be able to resuscitate them without having to do any new work,

just by putting a letter in to me saying:  I want to resuscitate them.

Then we take the whole case up after you've either served the other defendants or if at a certain point you say, Mr. Gilberti, "I can't serve them, there's something else going on," in which case we'll be wherever we are with Mr. Hoffman.

In the meantime, my inclination would be to talk to Judge Allen a bit and convey to her that there really shouldn't be discovery, pending us getting closure on whether you're gonna serve the other defendants.

What do you think of all that?

MR. GILBERTI:  It's very practical and I agree.

THE COURT:  What do you think, Mr. Hoffman?

MR. HOFFMAN:  I appreciate the predicament that the Court's in, and, frankly, I didn't have an answer to that difficult question.  I think that's a practical way to address this problem if we can preserve the right to come back to court and say there's no personal jurisdiction here.

THE COURT:  Right.  I mean, you want to preserve your right to be able to, sort of, without much fuss put those motions back on the docket without having to go through any rigmarole.  And you don't want to be spending money on discovery between now and -- how much time do you think on this theory would -- I guess what I'll do is this:  I would

deny the motion without prejudice, as we discussed.  I would work with Judge Allen to ensure there's no merits discovery.

Then, Mr. Gilberti, you'll figure out whether you can/will serve these other defendants.

How long do you think you need to close on that?

MR. GILBERTI:  As I just said, I don't know, but I would ask for 30 days, just to give me some ability to talk to Mr. Hoffman, get more into the background of what's been going on from the service standpoint and everything else.

THE COURT:  Right.

MR. GILBERTI:  If you want to shorten it, you can shorten it; but I think realistically, given what my schedule looks like in the future and everything else, that's what makes sense.

THE COURT:  I'm not trying to artificially shorten it. I think the complexity here is just -- this could turn out to be just an entirely different case.

Look, if you can serve those entities and they're in the case, I don't know if you're gonna care to keep Mr. Sternberg in the case or not.  You're new and you're figuring that out.

I think, reading between the lines a little bit, if you can't find these entities or Mr. Gross or if they have no pockets at all, then you're gonna have a different set of considerations.

I think, rather than going much further, it's worth us at least giving you a real interval to serve these defendants and then to take a deep breath.  You're new to the case.  I don't know even if you'll even care to have Mr. Sternberg in the case if you have those other defendants.  I just don't know.

I have no view of the merits here.  In the way the complaint is pled, CHG and Mr. Gross have a certain role, and Mr. Sternberg has what's clearly a lesser role.  So it's odd to imagine going forward without even attempting to bring CHG or Mr. Gross into the case.

MR. GILBERTI:  I agree wholeheartedly, Your Honor.

THE COURT:  Here is what I'm gonna do:  I'm gonna enter an order this morning denying without prejudice your motions.  I'm gonna work with Judge Allen to ensure there's no further discovery as to Mr. Hoffman's clients until a certain point.

And to figure out what that point should be, why don't we set a control date of December 3rd.

And what I'll ask you to do, Mr. Gilberti, is if you haven't served -- well, when and if you serve Charlton Holdings Group LLC and/or Samuel Gross, you should put a letter on the docket letting me know you've done so.

If you haven't done so by December 3rd, why don't you put a letter on the docket indicating how you aim to proceed here.  That way we can figure out at that point what to do

about Mr. Hoffman's clients, et cetera.

MR. GILBERTI:  I'll do that, Your Honor.  Thank you.

THE COURT:  Mr. Hoffman, what do you think about the whole thing?

MR. HOFFMAN:  That sounds fine, Your Honor.

Is my understanding correct that the motion to dismiss -- that the substantive motion to dismiss -- seeking to dismiss the claims --

THE COURT:  I'm go deny all that without prejudice but allow you to bring it back onto the docket.

Does that work for you?

MR. HOFFMAN:  That all of it will be denied without prejudice.

THE COURT:  No, without prejudice on all of the motions, because I don't know what your clients' role is gonna be in this case.

MR. HOFFMAN:  Understood.

THE COURT:  Does that work?

MR. HOFFMAN:  Yes.

THE COURT:  I'll do all that.

Look, Mr. Gilberti, I don't know what to make of those motions, and I looked briefly at the substantive 12(b)(6) part of it just to gain an understanding for dealing with the threshold questions.  But if there's not another defendant here, I think the simple answer is we'll put them back on the

docket.  It won't cost your client anything extra.

I'm just loath to spend a lot of time resolving them because the whole case may look entirely differently, including with respect to transfer questions but also in terms of which defendants remain at the table if Mr. Gilberti were to actually end up serving people.

All right.  I'm gonna put an order on the docket doing all that.  I appreciate you both coming in.

Anything else we should cover, Mr. Gilberti, from your perspective?

MR. GILBERTI:  Nothing from us, Your Honor.

THE COURT:  Mr. Hoffman?

MR. HOFFMAN:  Nothing further.  Thank you, Your Honor.

THE COURT:  I just want to say -- I said the papers were wonderful.  I think they were great.

MR. HOFFMAN:  Thank you, Judge.

THE COURT:  I think both of you wrote really good papers.  You should feel -- I think they were both extremely well done.  Hats off.

Thank you both.  We're adjourned.

Have a good weekend, and I'll put an order on the docket.

MR. GILBERTI:  Thank you.

MR. HOFFMAN:  Thank you.

///

*United States District Court*
*District of New Jersey*

(Which were all the proceedings held in the above-entitled matter on said date.)

* * * * *

<u>FEDERAL OFFICIAL COURT REPORTER'S CERTIFICATE</u>

I, **Lisa A. Larsen, RPR, RMR, CRR, FCRR,** Official Court Reporter of the United States District Court for the District of New Jersey, do hereby certify that the foregoing proceedings are a true and accurate transcript from the record of proceedings in the above-entitled matter.


*/S/Lisa A. Larsen, RPR, RMR, CRR, FCRR*

Official U.S. District Court Reporter ~

District of New Jersey


DATED this November 17, 2025

*United States District Court*
*District of New Jersey*